UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAIME MORA,

      *Petitioner*,

v.                                       Case No. 3:26-cv-1740-JEP-SJH

MARKWAYNE MULLIN, et al.,

      *Respondents*.

_____/

## **ORDER**

Through counsel, Petitioner, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 on July 7, 2026. (*See generally* Doc. 1). Petitioner argues, among other things, that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See id.* at 7–9). He asks the Court to order his release. (*Id.* at 10).

The Federal Respondents filed a response in opposition to the petition. (*See generally* Doc. 8). According to the Federal Respondents, Petitioner has impeded his removal and, thus, the Court should toll the presumptively reasonable time period. (*Id.* at 7–9). The Warden filed a motion to dismiss,

arguing he is not a proper respondent in this case. (*See generally* Doc. 10). Petitioner filed a reply. (*See generally* Doc. 11).

## I.

Petitioner, a citizen of Cuba, was paroled into the United States in April 2002.[1] (Doc. 1 at 3; Doc. 8-1 at 3, 11). In 2004, he became a lawful permanent resident. (Doc. 8-1 at 4). From 2013 to 2015, Petitioner was charged with, and convicted of, multiple crimes. (*See id.* at 4–5, 7). On August 20, 2015, ICE issued Petitioner a Notice to Appear. (*Id.* at 9). An immigration judge ordered Petitioner removed on March 3, 2016. (*Id.* at 12). Petitioner completed his prison sentence and was subsequently released on an order of supervision ("OSUP") on November 8, 2016. (*Id.* at 14). ICE re-detained Petitioner on January 6, 2026. (Doc. 1 at 3).

On July 30, 2026, a deportation officer authored a declaration explaining ICE's position with respect to Petitioner's likelihood of removal:

> Petitioner is the subject of a final order [of removal] dated March 3, 2016. He was first transferred from the custody of the State of Florida to ICE ERO [(Enforcement and Removal Operations)] custody on January 6, 2026.
>
> . . . .
>
> ICE intends to remove the [P]etitioner to Mexico pursuant to INA § 241(b)(2)(E).

---

[1] While Petitioner asserts that he entered the United States on April 21, 2002, (Doc. 1 at 2), the documents that the Federal Respondents attach to their response indicate that he entered on April 30, 2002, (Doc. 8-1 at 3, 11).

The [P]etitioner will be transferred to one of the corresponding ICE field offices along the southwest border that processes third-country removals to Mexico.

The [P]etitioner will receive a Notice of Removal to Mexico 24 hours prior to his transfer to the relevant field office.

The receiving ERO field office will then notify Mexico's Instituto Nacional de Migración (INM) of the [P]etitioner's upcoming removal to Mexico.

Following INM's final acceptance, he will be immediately transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico.

Each ICE field office along the southwest border that processes third-country removals to Mexico removes a varying amount each week. Removals take place from each corresponding office from once a week to several times a week.

On or about March 3, 2026, Petitioner was served a Notice of Removal to Mexico which he refused to sign. On or about March 28, 2026, Petitioner was served Form I-229(a), Warning for Failure to Depart and Instruction Sheet.

ICE transported Petitioner to Port Isabel Service Processing Center on April 2, 2026, for removal via the Arizona-Mexico land border.

On or about April 3, 2026, Petitioner was transferred to the Florence Staging Facility for removal.

Petitioner was scheduled to be removed on or about April 6, 2026, via land border removal to Mexico but on [the] date of removal, [P]etitioner was asked if he would comply with removal efforts to Mexico, to which [P]etitioner stated that he would not. He willfully failed and refused to depart the United States to Mexico when directed to do so by a Deportation Officer in the Arizona border with Mexico. His actions demonstrated a willful intent to not comply with the obligations serve[d] upon him.

> ICE Air Charter Operations was contacted to verify whether [INM] would accept the [P]etitioner, in order to coordinate and schedule a second third country removal attempt to Mexico via land border.

> Therefore, ICE determines that there is a significant likelihood of removal in the reasonably foreseeable future.

(Doc. 8-1 at 22–23).

## II.

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal.*" *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient

evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

## III.

Here, Petitioner was taken into ICE custody on January 6, 2026, and he filed this case on July 7, 2026—182 days after his detention. (*See* Doc. 1 at 3). Although Petitioner had been in ICE custody longer than 180 days when this case was filed, the Federal Respondents ask the Court to toll the six-month period because Petitioner "impeded efforts at removal on April 6, 2026 by affirmatively stating he would not comply with removal efforts slated for that day" and "refused to cooperate by exiting the bus that would have led him across the border and into Mexico." (Doc. 8 at 7, 9).

Section 1231(a)(1)(C) permits the "removal period" to be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh*, 945 F.3d at 1314 (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057,

7

1060 (9th Cir. 2003)); *see Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015)[2] ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas,* 533 U.S. at 701)).

Here, the Federal Respondents' position is based entirely on the deportation officer's averments that Petitioner "stated that he would not" comply with ICE's effort to remove him on April 6, 2026, and "willfully failed and refused to depart the United States" that day. (Doc. 8-1 at 23). However, the officer does not provide any context to his assertions or otherwise explain the circumstances that occurred at the border. It is unclear whether ICE transported Petitioner to the border and essentially asked him to voluntarily depart, whether ICE had ever previously communicated with Mexico regarding

---

[2] This Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when this Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060-61 (11th Cir. 2022); Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Petitioner, or whether ICE even had an approved plan for removal to Mexico that Petitioner actually thwarted in some way. And, although the deportation officer asserts that "ICE Air Charter Operations was contacted to verify whether [INM] would accept the [P]etitioner, in order to coordinate and schedule a second third country removal attempt to Mexico via land border," (Doc. 8-1 at 23), the officer does not explain whether Mexico ultimately agreed to do so, (*see id.* at 21–24). Further, assuming that Mexico would agree to accept Petitioner, the deportation office fails to explain why ICE could not or did not thereafter seek travel documents for Petitioner or otherwise plan for his removal to Mexico via a different way, such as a charter flight.

To the extent that the Federal Respondents also base their position on Petitioner's refusal to sign the documents they gave him, (*see* Doc. 8-1 at 23), they have not shown that Petitioner's actions were akin to a "refus[al] to make timely application in good faith for travel or other documents necessary" for his removal or that his "failure to sign" otherwise prevented his removal, 8 U.S.C. § 1231(a)(1)(C). The documents that Petitioner refused to sign were a notice to him about ICE's intention to remove him and a warning for failure to depart, not applications for travel documents or forms that would otherwise appear to assist in his removal. (*See* Doc. 8-1 at 18–19, 23). Indeed, if Petitioner's signature is necessary, then it is even more unclear how ICE could have attempted to remove him on April 6, 2026. (*See id.* at 3). Thus, the Court

finds that the presumptively reasonable six-month period of detention expired prior to Petitioner filing the petition.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner contends that "there is no significant likelihood of removal in the reasonably foreseeable future" because the Federal "Respondents have not effected removal, have not produced evidence that Mexico has formally accepted Petitioner for repatriation, and have not produced valid travel documents authorizing removal." (Doc. 1 at 7). Petitioner has now been detained for more than seven months, yet ICE still has been unable to remove him. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052.

The Federal Respondents argue that there is a significant likelihood of Petitioner's removal because "ICE Air Charter Operations has been contacted to verify whether Instituto Nacional de Migracion Mexico will continue to accept Petitioner in a second attempt at third country removal." (Doc. 8 at 9). But there is no information regarding when ICE plans to make this second attempt. (*See* Doc. 8-1 at 21–24). Instead, the declaration merely describes the general process for third-country removals to Mexico—there is no specific timeline provided for Petitioner's alleged removal. (*See id.* at 21–24). Nor is there any indication about whether Mexico will provide "final acceptance" of

Petitioner. (*Id.* at 22 ("Following INM's final acceptance . . . .")). Petitioner now has been in ICE custody for over seven months—more than one month longer than the presumptively reasonable period—with ICE being unable to remove him or otherwise provide more specific details on when he will be removed. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s].").

Thus, based on the evidence presented, the Court finds that the Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release").

Accordingly, it is **ORDERED**:

1. The Warden's motion to dismiss (Doc. 10) is **DENIED** for the same reasons stated in *Lanvin-Valdez v. U.S. Immigr. & Customs Enf't*, No. 3:26-CV-180-JEP-SJH, 2026 WL 1004569, at *2–3 (M.D. Fla. Apr. 14, 2026).

2. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as to his *Zadvydas* claim.[3] Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

3. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on August 11, 2026.

_____
JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Counsel of Record

---

[3] Because the Court grants relief on Petitioner's *Zadvydas* claim, the Court need not address Petitioner's other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").